UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------

|   |   |   |   |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 04-34887 (ASD) |
| | ) | | |
| CLARENCE T. HILL and | ) | CHAPTER | 7 |
| AMY B. HILL, | ) | | |
| | ) | | |
| DEBTORS. | ) | | |
| | ) | Re: Doc. I.D. Nos. 48, 54, 55 & 61 | |

------------------------------------------------------

## MEMORANDUM OF DECISION ON ORDER TO SHOW CAUSE AND RELATED MOTIONS REGARDING SANCTIONS AGAINST COUNSEL FOR THE DEBTORS

### I. INTRODUCTION

The instant bankruptcy case is attended by a disturbing debtor agenda and misconduct involving concealment of a substantial material asset, false statements and testimony.   And, because it *preliminarily* appeared to the Court that the Debtors' misconduct was joined in and/or orchestrated by their attorney, the Court issued an Order to Show Cause compelling the Debtors' attorney to show cause why he should not be personally sanctioned  pursuant to  Fed. R. Bankr. P. 9011(b), 28 U.S.C. §1927, and the Court's inherent power.  Following consolidated hearings on the Order to Show Cause, and related motions seeking sanctions filed by the United States Trustee and the Chapter 7 Trustee, the Court now concludes that the Debtors' attorney knowingly, wilfully and intentionally orchestrated, joined, aiding and abetted, and enabled the Debtors' illicit scheme.   Accordingly, for the reasons set forth below, sanctions, as particularized hereafter and imposed on the Debtors' attorney by written order entered this same date, are warranted.

## II. PROCEDURAL BACKGROUND

### A.  Case No. 03-51362 (AHWS) - The First Case

On October 7, 2003, the Debtors, Clarence T. Hill and Amy B. Hill, represented by Attorney Joseph Rigoglioso (hereafter, the "Debtors' Attorney" or "Attorney Rigoglioso"), commenced Bankruptcy Case No. 03-51362 (AHWS) (hereafter, the "First Case") by the filing of a voluntary petition under Chapter 7 at the Bridgeport Division of this Court. Richard M. Coan, Esq., was thereafter appointed as the Chapter 7 Trustee.

By Order dated February 12, 2004, in response to a "substantial abuse" inquiry by the United States Trustee,[1] see 11 U.S.C. § 707(b)(1998), and upon the Debtors' motion, see Doc. I.D. No. 26, the First Case was converted to a case under Chapter 13.  Following the First Case's conversion to Chapter 13, the Debtors made no effort to advance the case.  As a result, and upon the Chapter 13 Trustee's Motion to Dismiss Case for Prejudicial Delay, Doc. I.D. No. 33, the First Case was dismissed on April 15, 2004.

### B.  Case No. 04-34887 (ASD) - The Instant Case

On October 19, 2004, the Debtors, again represented and assisted by Attorney Rigoglioso, commenced Bankruptcy Case No. 04-34887 (ASD) (hereafter, the "Instant Case"), by filing a voluntary petition (hereafter, the "Petition") accompanied by Schedules and a Statement of Financial Affairs under Chapter 7 of the Bankruptcy Code at the New Haven Division of this Court. Ronald I. Chorches, Esq. was thereafter appointed as Chapter 7 Trustee (hereafter, the "Trustee").

---

[1]The United States Trustee also sought, Doc. I.D. No. 11, and obtained, an Order, Doc. I.D. No. 21, extending the time to file a complaint objecting to the Debtors' discharge.

2

On June 10, 2005, upon the <u>United States Trustee's Ex Parte Motion for an Order</u>

<u>Directing Attorney Joseph Rigoglioso to Appear and Show Cause Why He Should Not Be</u>

<u>Sanctioned</u> (hereafter, the "Initial Motion"), Doc. I.D. No. 41, this Court issued an <u>Order</u>

<u>. . . to Show Cause . . .</u>  (hereafter, the "Initial Order"), Doc. I.D. No.  42, directing Attorney

Rigoglioso to appear before the Court on June 15, 2005 (hereafter, the "Initial Hearing").

The Initial Order directed Attorney Rigoglioso to "show cause why he should not be

sanctioned for the filing of a Petition, Schedules and Statement of Financial Affairs

containing false information and/or omitted information . . . ".  Attorney Rigoglioso, the

Debtors, the Trustee, and the United States Trustee through her counsel, appeared at the

Initial Hearing.[2]

On March 13, 2006, the Court entered its <u>Brief Memorandum and Order Denying</u>

<u>United States Trustee's Request for Sanctions Without Prejudice</u> (hereafter, the

"Memorandum and Order"), Doc. I.D. No. 49**,** denying the Initial Motion but, *inter alia*,

providing opportunity for the Trustee and the United States Trustee to file Supplemental

Motions reasserting and providing specific notice of the conduct alleged to be sanctionable,

and noticing the legal authority under which the sanctions are to be considered.[3] On that

---

[2]At the Initial Hearing Attorney Rigoglioso acknowledged, *inter alia*, that certain responses to questions in the Petition and Statements were false, but stated that at no time did he act with  "intent to deceive".

[3]In the Memorandum and Order the Court determined the Initial Motion was flawed for its failure to notice any legal basis for sanctions. (Parties subjected to potential sanctions must receive specific notice of the conduct alleged to be sanctionable *and the authority under which the sanctions are being considered*.  <u>See</u>, e.g., <u>In re Ames Dept Stores</u>, 76 F.3d 66, 70  (2d Cir.1996) ("In as much as different sanction mechanisms – such as Fed. R. Civ. P. 11 (and its counterpart in bankruptcy proceedings, Bankruptcy Rule 9011), 28 U.S.C. § 1927, or the court's inherent authority to curtail abusive litigation practices -- involve different substantive standards, we have

same date the Court, on its own initiative, issued an <u>Order to Show Cause,</u> Doc. I.D. No.

48, <u>see</u>, <u>e.g.</u>, Fed. R. Bankr. P. 9011(c)(1)(B), serving, *inter alia*, as the requisite notice of

the (i) conduct alleged to be sanctionable, and (ii) legal authority for such sanctions

pursuant to  Fed. R. Bankr. P. 9011(b), 28 U.S.C. §1927, and the Court's  inherent power.

On March 30 and 31, 2006, the Trustee and the United States Trustee filed

Supplemental Motions, Doc. I.D. Nos. 54 & 55, respectively (hereafter, the "Supplemental

Motions").[4]   On April 6, 2006, the Trustee filed an Amended Supplemental Motion

(hereafter, the "Trustee's Amended Supplemental Motion"), Doc. I.D. No.  61,  to which

Attorney Rigoglioso filed a reply, Doc. I.D. No.  69. The Supplemental Motions and the

Trustee's Amended Supplemental Motion generally tracked the language of the Order to

Show Cause and sought sanctions against Attorney Rigoglioso "for his participation in the

filing of a Petition, Schedules and Statement of Financial Affairs (i) containing false

information that he knew or should have known was false, (ii) omitting information that he

knew or should have known was being omitted, both regarding the ownership and sale of

real property, and the resulting sale proceeds, by the Debtors within six months of the filing

of this bankruptcy case, (iii) for his filing of two amended Schedule Cs seeking to exempt

the non-disclosed sale proceeds, and (iv) for his testimony at the [Initial Hearing] when he

claimed not to have recognized the Debtors when he prepared the Petition, Schedules and

Statement of Financial Affairs for this case."   <u>United States Trustee's Post-Hearing</u>

---

repeatedly required courts to specify the source of their authority to impose sanctions.")
(citations omitted)).

[4]In the event of the timely filing of Supplemental Motion(s), the Memorandum
and Order, *inter alia*, provided for a hearing thereon coincident with the date and time of
the hearing on the Order to Show Cause.

4

Proposed Findings of Fact and Memorandum of Law in Support of Her Motion for Sanctions Against Attorney Rigoglioso (hereafter, the "U. S. Trustee's Post-Hearing Memorandum"), p. 1.[5]

A consolidated hearing on the Order to Show Cause, the Supplemental Motions, and the Trustee's Amended Supplemental Motion, was held on May 18, 2006 (hereafter, the "Hearing"). Thereafter, the parties filed Post-Hearing Briefs, Doc. I.D. Nos. 75, 77 and 78, and the Court heard and considered arguments of counsel.

### III. FINDINGS OF FACT

The recitation of somewhat detailed facts is necessary for a full appreciation of the Debtors' fraudulent conduct and the assistance provided by Attorney Rigoglioso. In addition to the First Case, several other relevant events preceded the commencement of the Instant Case. Chief among these events, occurring approximately one month after the dismissal of the First Case, was the Debtors' receipt of net proceeds of $77,910.28 in connection with the sale of their home, discussed in detail hereafter.

The following facts, discussed in chronological sequence, are uncontested and/or derived from (i) the Initial Hearing and Hearing records, and further proceedings held August 29, 2006, (ii) the files and records of the First Case, and (iii) the files and records of the Instant Case.

A.  Case No. 03-51362 (AHWS) - The First Case

1. According to the Disclosure of Compensation of Attorney for Debtor, Attorney

---

[5]In the U. S. Trustee's Post-Hearing Memorandum, the United States Trustee also sought sanctions based upon Attorney Rigoglioso's alleged "multiple contradicting statements" at the Initial Hearing.

Rigoglioso received $1,000.00 from the Debtors in connection with the First Case.

2. In the First Case, under penalty of perjury, the Debtors listed on Schedule A (Real Property) ownership of real property located at 465 Greenwood Street, Bridgeport, Connecticut (hereafter, the "Property"), valued by them at $210,000.00, and subject to a mortgage held by Wells Fargo Bank in the amount of $131,406.16, <u>see</u> Schedule D (Creditors Holding Secured Claims).  Both Debtors listed the Property as their residence/street address.

3. On December 24, 2003, Attorney Rigoglioso, responding to a creditor's <u>Motion for Relief from Automatic Stay</u> (hereafter, the "Motion for Relief from Stay"), Doc. I.D. No. 8, filed an <u>Objection to Motion for Relief from Stay</u> (hereafter, the "Objection"), Doc. I.D. No. 15. The Motion for Relief from Stay sought a modification of the automatic stay of Section 362(a) to permit a creditor to proceed with a state court foreclosure action concerning the Property.  In the Objection, *inter alia*, Attorney Rigoglioso particularized the Property's alleged fair market value and the debt thereon. The Motion for Relief from Stay was granted by Order dated January 21, 2004.  Doc. I.D. No. 24.

4.  Within the First Case Attorney Rigoglioso also represented the Debtors in connection with a complaint to determine dischargeability of a debt, alleging, *inter alia*, "false pretenses, false representations and/or actual fraud" in connection with an extension of credit, <u>MBNA v. Clarence T. Hill and Amy B. Hill</u>, Adversary Proceeding No. 03-05145. <u>See, e.g.</u>, <u>Answer</u>,  Doc. I.D. No. 10.  Following the dismissal of the First Case, Adversary Proceeding No. 03-05145 was dismissed by Order entered September 17, 2004, Doc. I.D. No.  14, and formally closed on September 20, 2004.  Attorney Rigoglioso was served with

a BNC notice of the dismissal order on September 19, 2004.[6]

5. In connection with the First Case, Attorney Rigoglioso had at least three in-person

meetings with the Debtors:

a) an initial in-person meeting, in June, 2003, discussing the filing of
a bankruptcy petition;

b) a second meeting, in October, 2003, to review with the Debtors the
bankruptcy petition proposed for filing in the First Case, and to have them
sign the petition; and

c. a third meeting, on October 29, 2003, appearing with the Debtors
at the Section 341 meeting of the creditors.

6. In addition to the three in-person meetings referenced in the immediately

preceding paragraph, Attorney Rigoglioso, in connection with the First Case, spoke with

the Debtors by telephone on several occasions.

*B. The Property Sale*

7. On May 24, 2004, approximately one month after the April 15, 2004, dismissal

of the First Case, the Debtors sold the Property for $220,000.00, and received $77,910.28

in net proceeds (hereafter, the "Net Proceeds") at the closing. See Exhibit V.[7]

8. While Attorney Rigoglioso did not represent the Debtors in connection with the

sale of the Property he was aware of the sale.

9. On June 24 and June 28, 2004, Attorney Rigoglioso wrote to the Debtors

---

[6]As noted hereafter, Attorney Rigoglioso's receipt of this notice was just days
after an initial meeting with Mr. Hill (to discuss the filing of a second bankruptcy
petition), *see* Part D., para. 13, *infra,* and only a few weeks prior to his meeting with
both Debtors to review and sign the petition filed in the Instant Case. *Id.*, para. 14.

[7]Unless otherwise indicated, "Exhibit . . . " refers to exhibits introduced in
evidence at the Hearing.

(Exhibits P and Q) requesting they sign and return to him a letter dated June 27, 2004 from him addressed to Attorney Nick D'Agosto, the Debtors' closing attorney (Exhibit R) (hereafter, the "Letter"). The Letter, consensually executed and acknowledged by the Debtors, returned by them to Attorney Rigoglioso, and then sent by Attorney Rigoglioso to Attorney D'Agosto, reads in pertinent part as follows:

Re: Clarence & Amy Hill – Sale of 465 Greenwood Street, Bridgeport, CT.

Please be advised that I represent Clarence and Amy Hill in connection with the filing of their Chapter 7 bankruptcy petition. Mr. & Mrs. Hill have informed me that you represented them for the sale of their real property at 465 Greenwood Street, Bridgeport. Please provide me with a copy of the closing statement from said sale. In addition, I understand that you are holding the proceeds of the sale. By agreement of the parties, please issue a check to me in the amount of $1,709.00 to cover the cost of their Chapter 7.

10. Responding to the Letter, Attorney D'Agosto, *inter alia*, sent a check in the amount of $1,709.00[8] to Attorney Rigoglioso.[9]

*C. Attorney Rigoglioso's Office Move and Illness*

_____11. At the Hearing Attorney Rigoglioso testified that in August, 2004, he moved his office to a different floor in the same building, and that at or around the same time he purchased a new computer system. He further testified that while a bankruptcy program

---

[8]Attorney Rigoglioso initially testified that he did not request additional money from the Debtors for representing them in an adversary proceeding filed in the First Case, but later admitted charging them $500.00 in June 2004.  He testified that of the $1,709.00 fee paid to him from the proceeds of the sale of the Debtors' Property, a portion was for payment of fees outstanding from the First Case. As already noted, according to the Disclosure of Compensation of Attorney for Debtor,  Attorney Rigoglioso reported that he received $1,000.00 from the Debtors in connection with the First Case. *See* Part III, Findings of Fact, Part A, ¶ 1, *supra*.

[9]Attorney Rigoglioso testified he "assumed" he received the check but did not recall receiving a copy of the closing statement. (Tr. pp. 174, 235)

that had been used in his practice was installed on the new computer, client data on the old computer was lost. (Tr. pp. 14-16).

12.   At the Hearing Attorney Rigoglioso also testified that in the later part of July, 2004, he suffered a medical condition resulting in paralysis of his right arm. (Tr. pp. 23, 302).[10]   According to an employee, during this time Attorney Rigoglioso was not in the office "much"  as he "was either at the doctors or physical therapy" or he just felt "crummy" and went home. (Tr. pp. 302-303).

*D.  Case No. 04-34887 (ASD) - The Instant Case*

13.   On September 15, 2004, Mr. Hill met with Attorney Rigoglioso and discussed filing a *second* bankruptcy petition.[11] After determining that a bankruptcy petition would be filed, an appointment to review and sign the petition was set for October 6, 2004.

14.   On October 6, 2004, Attorney Rigoglioso met with the Debtors and reviewed their proposed bankruptcy petition with them, following which the Debtors signed the Petition and Schedules under oath.

15.   Attorney Rigoglioso prepared the Petition, related Schedules, and the

---

[10]Specifically, Attorney Rigoglioso testified that his right arm became "numb, tingly, and [he] couldn't move it." (Tr. at pp. 23, 302.

[11]*See*, *e.g.*, Attorney Rigoglioso's proposed findings. Post-Trial Brief, Doc. I.D. No.  78, ¶ 19 ("19. During this period of illness, on September 15, 2004, Mr. Hill met with the Respondent about filing a second bankruptcy petition. Respondent did not recognize Mr. Hill nor did he realize, during the meeting, that he had filed a bankruptcy petition for Mr. and Mrs. Hill previously and that this would be his second filing or that Mr. and Mrs. Hill had recently sold their residence.") (Tr. pp. 26-27).
    At the Hearing, Attorney Rigoglioso testified, *inter alia*, '[I took down the information] that I needed to file the second – well, to file the petition. I didn't realize it was the second petition", and that he did not recall that the Debtors had recently sold the Property. Tr. at pp. 26-27.

Statement of Financial Affairs upon the basis of his *personal questioning of the Debtors*.

16. On October 19, 2004, the Debtors commenced the Instant Case by Attorney Rigoglioso's filing of the Petition under Chapter 7 on their behalf.

17.  According to the <u>Disclosure of Compensation of Attorney for Debtor</u>, Attorney Rigoglioso received $1,000.00 from the Debtors for the Instant Case.

18.  On the Petition, Mr. Hill's address was listed as 9-½ Swan Avenue, Seymour, Connecticut,  and Mrs. Hill's as 750 Queen Street, Bridgeport, Connecticut.[12]

19. On Schedule A, the Debtors scheduled no interest in real property.

20. The Debtors' Schedule F (Creditors Holding Unsecured Non-Priority Claims) in the Instant Case is virtually identical to the Schedule F filed in the First Case, as summarized hereafter:

| Creditor | Scheduled Amount in First Case | Scheduled Amount in Instant Case |
|---|---|---|
| Alliance One | Not listed | $1,000.00 |
| *American OnLine* | *4,056.19* | *$4,056.19* |
| *American Express* | *10,657.59* | *10,657.59* |
| *American Express Gold* | *2,584.55* | *2,584.55* |
| *Bank of America* | *9,972.00* | *9,972.00* |
| *Capital One* | *10,860.00* | *10,860.00* |
| *Capital One Bank* | *8,559.83* | *8,559.83* |
| *Chase Bank Card Services* | *19,013.74* | *19,013.74* |
| *Chase Freedom Platinum* | *11,627.47* | *11,627.47* |
| *CitiCards* | *798.14* | *798.14* |
| *GE Card Services* | *25,716.61* | *25,716.61* |
| *Kohl's* | *1,100.00* | *1,100.00* |
| *MBNA America[13]* | *22,063.16* | *22,063.16* |

[12]In light of Mr. Hill's Seymour address, and pursuant to D. Conn. LBR 1073-1(a), the Instant Case was assigned to the New Haven Division of this Court.

[13] As already noted, *see* Finding No.4, *supra*, within the First Case Attorney Rigoglioso represented the Debtors in connection with a complaint brought by MBNA to determine dischargeability of this debt.

10

| | | |
|---|---|---|
| *Sears* | *8,518.83* | *8,518.83* |
| *UFCW/Household Credit* | *7,101.47* | *7,101.47* |
| Total | $141,629.58 | $142,629.58 |

21.  Responding to the Petition's requirement to list "Prior Bankruptcy Case[s] Filed Within Last 6 Years", the Debtors falsely answered "None", thereby failing to disclose the First Case.

22. On the Statement of Financial Affairs, in response to Question No. 10 (property transferred within the past two years other than in the ordinary course of business or financial affairs), the Debtors falsely answered "None".

23. On their Statement of Financial Affairs, in response to Question No. 15 (all premises occupied and vacated within two years of the bankruptcy filing), the Debtors falsely answered "None".

24. On Schedule B (Personal Property) the Debtors listed $40.00 in cash and $40.00 in a checking account, notwithstanding that they then retained at least $60,000.00 of the Net Proceeds from the Property sale.

25. With regard to the Debtors' numerous false representations in the Petition, <u>see</u>, <u>e.g.</u> Finding Nos.  21 – 24, <u>supra</u>, Attorney Rigoglioso explained,  "I have a sheet that I ask questions to and their responses were to me  "none", "none",  "none", "none".  It was their responses to me that made its way to the Petition, your Honor. . . . I went through the questions with them, that was the responses".  Tr. at 12:06:24.

<u>D.  The Section 341 Meeting</u>

26. On November 9, 2004, the Debtors, accompanied by Attorney Rigoglioso, appeared and testified under oath at a Section 341(a) meeting of creditors in the Instant

Case (hereafter, the "341 Meeting").

27.  At the 341 Meeting, the Debtors testified, *inter alia*, that they filed a "Chapter

13" last year which was dismissed, Tr. at 11.

28.  At the 341 Meeting, the Debtors further testified that they sold the Property in

April or May of 2004, and received $77,000.00 in proceeds[14] split equally between them.

Specifically, the following exchange occurred:

> THE TRUSTEE: And what happened to that property?
> MRS. HILL: It was sold.
> MR. HILL:  It was sold.
> MR. RIGOGLIOSO: They fell behind on their mortgage payments. They couldn't keep it up living separately. The property was sold.
> The TRUSTEE: When was it sold?
> MR. RIGOGLIOSO: About six months ago?
> MR. HILL: Yes.
> THE TRUSTEE: All right, and how – Did you receive any money?
> MRS. HILL: Yes.
> MR. HILL: Yes.
> THE TRUSTEE: How much?
> MRS: HILL: Seventy-seven thousand, total --
> MR. RIGOGLIOSO: They split it –
> MRS: HILL: – split between us.
> MR. RIGOGLIOSO: – between them.
> THE TRUSTEE: Seventy-seven thousand dollars, six months ago?
> (No audible response)
> THE TRUSTEE: What's the date of the  –
> MR. RIGOGLIOSO: The petition is dated October 19th.
> THE TRUSTEE: Okay, and when was it sold?
> MR. RIGOGLIOSO: Six months ago. Probably that would have been around April.

Section 341 Tr. at 3-4.

29.  Responding to the Trustee's question "Where is the $77,000.00 now?", Section

341 Tr. at 4, the Debtors offered sundry responses, as follows:

---

[14]As noted, the actual Net Proceeds equaled $77,910.28.

12

MRS. HILL: I spent it to relocate, buy new household items . . . , Tr. at 4,
MRS. HILL . . . I had to have money for the rent in advance. I had to buy
appliances.  Tr at 5,
MR. HILL: I purchased stuff too, Tr. at 5, [a "lot in cash"], Tr. at 6,
MRS. HILL: I just spent the money, Tr. at 5,
leaving no money in checking accounts, cash or bank accounts on the
Petition date. Tr. at 8.

30.  On or about December 8, 2004,  approximately a month after the 341 Meeting,

Attorney Rigoglioso contacted the Trustee and advised him that as of the Petition Date the

Debtors retained approximately $60,000.00 of the Net Proceeds.  On December 9, 2004,

the Trustee, upon being advised of the above, wrote to Attorney Rigoglioso noting, *inter*

*alia,*

> "[y]our matter of fact comments to me that you will just file an amended
> schedule C to exempt these assets or to dismiss this bankruptcy were
> shocking. You are the Debtors' Counsel of record and you have an
> affirmative duty to counsel your clients of their obligations under the
> Bankruptcy Code and to help the trustee administer this estate.
>      I am requesting that you immediately instruct your clients not to use
> any of their bank accounts and not to withdraw any funds out of their
> accounts. I am requesting that you provide me with copies of the Debtors'
> bank statements <u>immediately</u>, with account numbers and the addresses of
> their main branches so that I may withdraw these funds.

Exhibit N -1. See footnote 26, infra.

31.  On January 11, 2005, the Debtors filed an amended Schedule B, Doc. I.D. No.

12,  which listed $6,200.00 in a bank account owned by Mr. Hill and $41,910.00 in a bank

account owned by Mrs. Hill (totaling $48,110.00) as "Proceeds Remaining from Sale of

Residence", and added $25,000.00 in a "401K Plan"[15] owned by Amy Hill.

32.  On March 7, 2005, the Trustee commenced an adversary proceeding (Adv. Pro.

No. 05-03050) by filing a complaint seeking to deny the Debtors their general discharge

---

[15]The Debtors listed $25,000.00 in Mrs. Hill's 401K Plan in Schedule B in the
First Case.

(hereafter, the "Discharge Complaint").[16]  In the Discharge Complaint, the Trustee asserted

four statutory predicates for denial of discharge: (i) Bankruptcy Code Section 727(a)(4)(A)

(failure to testify truthfully at the 341 Meeting - Count One); (ii) Section 727(a)(4)(D)

(withholding information - Count Two); (iii) Section 727(a)(6)(A) (disobedience of a lawful

court order - Count Three); and (iv) Section 727(a)(5) (failure to explain loss or deficiency

of assets - Count Four).

33.  On May 10, 2005, in an effort to avoid answering the Discharge Complaint, the

Debtors filed a written Waiver of Discharge (hereafter, the "Waiver"), Doc. I.D. No. 35. See

Section 727(a)(10). On March 13, 2006, the Court entered an Order, Doc. I.D. No.  46,

approving the Waiver with special notice provisions.[17]

34.  At the Initial Hearing Attorney Rigoglioso acknowledged the Debtors' failure to

schedule the Net Proceeds from the sale of the Property, that the Debtors' responses to

many of his questions were false, and that certain of the Debtors' responses at the 341

meeting were false, but stated that at no time was there any "intent to deceive" on his part.

Tr. 11:58:00.

35.  At the Initial Hearing, when asked by the Court for his explanation of the false

responses to the following questions,

"[List] Prior Bankruptcy Case(s) Filed Within Last Six Years", see
Petition, Form B-1, Page 2,

"Property transferred . . . within one year immediately preceding the
commencement of this case", see Statement of Financial Affairs, ¶ 10, and

---

[16]By Order dated May 18, 2005, the Court approved the United States Trustee's
request to join this adversary proceeding as a party plaintiff.

[17]All creditors received notice that no discharge order entered in the Instant
Case. See Fed. R. Bankr. P. 4006.

"if the debtor has moved within . . .  two years . . . list all premises occupied during that period and vacated prior to the commencement of this case", <u>see</u> Statement of Financial Affairs, ¶ 15,

Attorney Rigoglioso explained that he represents numerous debtors, and that at the times he personally met with the Debtors in preparation for the Instant Case, "he just did not recognize" them as previous clients.  Tr. 12:02:15.

## IV. DISCUSSION

*A. <u>Sanctions Under Bankruptcy Rule 9011</u>*

A Bankruptcy Court has the authority, under Bankruptcy Rule 9011(b) to impose sanctions on any party or attorney who, *inter alia*, signs, or otherwise affirms or advocates, a document (i) for any improper purpose, (ii) asserting factual contentions lacking evidentiary support, or (iii) denying factual contentions not warranted on the evidence. More specifically, Rule 9011, reads in pertinent part:

> (b) *Representations to the Court.*  By presenting to the Court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances, –
>
> > (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> >
> > * * * *
> >
> > (3) the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, of specifically so identified, are reasonably based on a lack of information or belief.
> >
> > * * * *

15

Fed. R. Bank. P. 9011 (2004).

The preliminary requirement of Rule 9011 is the existence of a signed or otherwise affirmed or advocated petition, pleading, motion, or other document. E.g., Adduono v. World Hockey Assoc., 824 F.2d 617 (8th Cir.1987). This requirement is met in this matter by the signed and filed Petition, Schedules and Statements which commenced the Instant Case. Violations of Rule 9011 are determined by applying an objective standard of reasonableness under the circumstances. E.g., In re KTMA Acquisition Corp., 153 B.R. 238, 248 (Bankr. D. Minn. 1993). When a Court finds that such a violation has occurred, sanctions against those responsible should be considered, and imposed where appropriate. See Fed. R. Bankr. P. 9011(c)(2), discussed infra.

At the Initial Hearing, Hearing, and in his responsive pleadings, Attorney Rigoglioso vigorously denied presenting any document or pursuing any strategy for any improper purpose, or knowingly and/or wilfully participating in any illicit bankruptcy scheme. He has, however, admitted to negligent or reckless conduct. In essence, Attorney Rigoglioso asks the Court to accept a simple tale in which the Debtors lied to him in face-to-face meetings. He assets that under "normal" circumstances he would have detected those lies with reasonable inquiry; but, arguing that he was then distracted and otherwise disengaged to the point of obliviousness, he asserts he innocently and blindly accepted the Debtors' lies as true, incorporated them into documents, and then filed those documents with the Court with no actual appreciation of the false representations therein.

Fatal to the credibility of Attorney Rigoglioso's explanation are numerous circumstances including, *inter alia*, those attending his initial meetings with the Debtors in the Instant Case. As more fully explained hereafter, the sum of these circumstances

16

clearly establish that Attorney Rigoglioso was a knowing and willful participant in a course of conduct with an "improper purpose",  and that on the Petition date he then knew the subject documents contained (i) false  factual representations and (ii) false denials.  Under such circumstances sanctions are warranted pursuant to Rule 9011 (b)(1), (3) and (4).  The factual and analytical predicates to these conclusions are set forth below.

In  light  of  his  extensive  personal  involvement  and  repeated  contacts  with  the Debtors  prior  to  the  commencement  of  the  Instant  Case,  the  Court  finds  Attorney Rigoglioso's  representation  that  he  failed  to  recognize  them  at  the  time  of  his  initial meetings with them in preparation for the Instant Case impossible to embrace.  The record reveals that in connection with the First Case Attorney Rigoglioso  personally met the Debtors on at least three separate occasions, had a number of telephonic conversations with them, and represented them in several ancillary but important matters, all within the year preceding the initiation of the Instant Case.  Within that period, Attorney Rigoglioso engaged a title search of the subsequently concealed Property and forwarded it to the Debtors.[18]  He filed an Objection to a motion for relief from the automatic stay directed at the Property, which at that time was the Debtors' residence.  Following his unsuccessful attempt to defeat the motion for relief from stay, Attorney Rigoglioso employed a Chapter 13 conversion strategy in the First Case, *inter alia*, to save the Property, avoid the U.S. Trustee's 'substantial abuse" inquiry, and defuse a complaint objecting to discharge.

Moreover, it is clear that following the April 15, 2004 dismissal of the First Case

---

[18] *See* Exhibit T (A December 23, 2003 letter from Attorney Rigoglioso to Mr. & Mrs. Clarence Hill  at the Property address, captioned "Re: Title Search on 465 Greenwood, Street, Bridgeport $85.00" and enclosing an invoice for a Title Search of the Property charging that amount.

Attorney Rigoglioso remained in contact with the Debtors.  More specifically, after the May 24, 2004 Property sale,  the Debtors informed him of the sale causing him to draft the June 27, 2004 letter. He then forwarded the letter to the Debtors for their written consent by endorsement thereon, received it back, and then sent it to Attorney D'Agosto – noting therein, *inter alia*, "Mr. & Mrs. Hill have informed me that you represented them for the sale of [the Property]," and requesting "payment" of his First Case bankruptcy fee.  Common sense applied to the unusual and contentious First Case history alone suggests it highly improbable that Attorney Rigoglioso failed to recognize the Debtors as prior clients when he met with them in connection with the Instant Case. The aforementioned post-First Case contacts, add color and depth to a picture already squarely at odds with Attorney Rigoglioso's claimed failure of recognition.

In addition to claiming he initially failed to recognize the Debtors as prior clients, Attorney Rigoglioso asserted that simultaneously the database in his new computer system failed to flag the Debtors as prior clients.[19]   However, notwithstanding the passage of approximately a year's time, and despite the certain accrual of interest and, perhaps, payments made, on unsecured claims, Schedule F in the Instant Case is virtually identical to Schedule F in the First Case. See Factual Finding ¶ 20, supra.  It appears that Attorney Rigoglioso either retrieved and transferred this information from his computer database, or used a hard copy of Schedule F filed in the First Case to prepare Schedule F in the Instant Case.  Either of these scenarios is indicative of recall and knowledge of the Debtors' First Case contemporaneous with the preparation of the Instant Case.

---

[19] Stating "their name was not in the system, because I had a new computer system." Hrg. Tr. 12:01:50.

Most telling of the incredible nature of Attorney Rigoglioso's narrative is his recitation of the Debtors' alleged responses to his questions. His assertion that his failure to immediately recognize the Debtors was the result, *inter alia*, of his representation of many clients is, at least arguably, not beyond any belief. But, unlike Attorney Rigoglioso, who represents many debtors, the Debtors were represented by one bankruptcy lawyer whom they chose to re-engage in the Instant Case as a result of forceful representation in the First Case.   And, just several months earlier,   the Debtors had informed Attorney Rigoglioso of the sale of the Property and executed the June 27 letter carving $1,709.00 out of the Property sale proceeds for Attorney Rigoglioso's fees in the First Case.  Against this background, the proposition that the Debtors responded "no" to Attorney Rigoglioso's purported question "have you filed a bankruptcy case within the last six years" at a face-to-face meeting with the very attorney who represented them in the First Case defies common sense. The Debtors' alleged negative responses to the Statement of Financial Affairs Questions 10[20] and 15[21] are similarly illogical in the context of an in-person consultation with their First Case attorney.

The first proposition offered by Attorney Rigoglioso in attempting to explain his lack of complicity in the false statements on the Petition and Statement of Financial Affairs – "I didn't recognize them" – is, standing alone, and at a minimum, highly suspect. The

---

[20] This question asks about property transferred within the past two years. *See* Finding of Fact ¶ 22, *supra*. Compounding the problem is Attorney Rigoglioso's statement that the Debtors failed to disclose to him the recent sale of their home (and the vacating thereof) when, only a few months earlier, they had signed letters authorizing him to carve out a $1,709.00 bankruptcy fee from the Property closing.

[21] This question asks about premises occupied and vacated within two years. See Finding of Fact ¶ 23, *supra.*

19

attendance of virtually identical and detailed Schedule Fs positions  the second proposition – Attorney Rigoglioso's assertion that "my computer missed them" – as unbelievable.  And, even in the event the computer failed to "flag" the Debtors as prior clients, the Instant Case Schedule F was obviously prepared using the First Case Schedule F.  Finally, Attorney Rigoglioso's assertion that "the Debtors' lied to his face", or words to that clear effect, is patently preposterous.

In the Order to Show Cause the Court specifically noted that counsel was "menaced by . . . the  wholly incredible nature of his explanation of the Debtor's alleged responses", Order to Show Cause, p. 14,  and warned Attorney Rigoglioso  that "[s]hould [he] continue to maintain he personally questioned the Debtors when preparing the Petition, Schedules and Statement in the Case, he must convince the Court to reassess its application of common sense . . . ." Id. at p. 15, fn. 16.  The Court has diligently searched the record and cannot locate a scintilla of credible evidence to warrant such a reassessment.

After extended consideration of the Initial Hearing and Hearing records, and an exhaustive review of the files and records of the First and Instant Cases, the Court concludes that when he initially encountered the Debtors in the Instant Case, and at the time he prepared and filed the Petition, Schedules and Statements, Attorney Rigoglioso then knew and was fully cognizant that:

(i)  the Debtors were prior his clients in the First Case,

(ii) that responding "none" to the question of  "any prior bankruptcy cases filed within the last 6 years" on the Petition in the Instant Case was false,

(iii)  that answering "none" in response to Statement of Financial Affairs Question 15 (inquiring as to other addresses used by a debtor within the preceding two years) was false,

(iv) that answering "none" in response to Statement of Financial Affairs Question 10 (inquiring as to property transferred within the preceding one year) was false, and

(v) that listing on Schedule B a total of $40.00 in cash and $40.00 in a bank account at the time of the bankruptcy filing 2004 was false.

Subsection (c) of Rule 9011, sets forth the standards for imposition of an appropriate sanction for the illicit conduct described in subsection (b).  That subsection provides in pertinent part as follows –

(c) *Sanctions.*  If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to conditions stated below, impose an appropriate sanction on the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

* * * *

(2) A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated.  . . .[T]he sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

Fed. R. Bank. P. 9011 (2004).

In determining what sanctions to apply, the Court must keep in mind Bankruptcy Rule 9011's central goal of deterrence.  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 392 (1990).  The sanction imposed must send a clear message that "the violator's behavior will not be tolerated and must stop."  In re KTMA Acquisition Corp., 153 B.R. 238, 268 (Bankr. D. Minn. 1993).  In the case at bar, the factors the Court has weighed in determining the appropriate sanction are:

(1) the relative severity of the violation;

21

(2) the ability to pay a fine or sanction;

(3) whether the sanction is the least severe that will deter undesirable conduct;

(4) the effect of the conduct on the court's docket;

(5) the prejudice to parties and the bankruptcy estate resulting from the conduct;

(6) the deterrent effect necessary to protect the integrity of the judicial system;

(7) any history of sanctionable conduct by the offending party;

(8) an analysis of the duty to mitigate and actual mitigating conduct or circumstances;

(9) any other factors appropriate in the individual circumstances.

See, e.g., id at 268 -269; In re Brown, 152 B.R. 563, 569 (Bankr. E.D. Ark. 1993).

Significantly, the Debtors' false statements and representations, knowingly implemented through Attorney Rigoglioso, assault the very core of our judicial system – its integrity; and thus constitute a violation of the greatest severity. Attorney Rigoglioso's conduct in improperly prosecuting the Instant Case prejudiced creditors, the Trustee, the United States Trustee, and visited a disruptive and wasteful effect on the limited resources of this Court and the Court's docket.  An inexorable amount of time and resources have been devoted by the Court, the Trustee and the U.S. Trustee to uncover the truth in this matter. The Trustee alone needlessly expended 31.5 hours totaling $8,436.50[22] in

---

| [22]Year | Hours | Hourly Rate | Amount |
|------|-------|-------------|--------|
| 2004 | 2.4 | $245.00 | $588.00 |
| 2005 | 7.7 | 255.00 | 1,963.50 |
| 2006 | 21.4 | 275.00 | 5,885.00 |
| Total: | | | $8,457.90 |

reasonable[23] fees as a direct result of Attorney Rigoglioso's conduct deemed sanctionable herein pursuant to Rule 9011(b).

The usual sanction for a violation of Rule 9011 is a monetary one. Attorney Rigoglioso, an attorney, appears to have an ability to pay, and such sanctions will be imposed here.  However, this is not the first occasion Attorney Rigoglioso has been sanctioned by the undersigned judge.  See In Re Patricia Morris, Case No. 04-34886, *Memorandum on Motion for Sanctions* dated March 13, 2006, determining, *inter alia*, that Patricia Morris, pursued "an illicit bankruptcy agenda entirely without color, in bad faith, and motivated by improper purposes . . . orchestrated with the substantial assistance of Attorney Rigoglioso" and imposing monetary sanctions against Attorney Rigoglioso. Inclusion of this history in the present sanctions calculus causes the Court to determine that monetary sanctions alone are insufficient in this case. Keeping in mind the central goal of deterrence of future conduct, an "educational" sanction, as particularized hereafter, is also appropriate.

Among all of the above aggravating circumstances is, at least arguably, limited mitigating conduct.  There is no doubt that Attorney Rigoglioso's conduct in assisting the Debtors in hiding the Property sale net proceeds, coupled with continuing concealment of the same between the Petition Date and the Section 341 meeting, and compounded by his general conduct and attitude at the Section 341 meeting and before the Court – conduct

---

*See*, *Trustee's Post Hearing Memorandum*, Doc. I.D. No. 77**,** Exhibit 12.

[23]In light of the time expended by this Court in connection with this matter – far in excess of the Trustee's 31.5 hours – that amount of time appears perfectly reasonable.

resplendent with "multiple contradicting statements and representations" as charged by the

Trustee and the United States Trustee -- represents an officer of this Court at his worse.

Nevertheless, Attorney Rigoglioso's "disclosure" of the Property sale at the 341 meeting,

and his subsequent "cooperation" with the Trustee, although reluctant, lacking in celerity,

and driven by a self-defense motivation,[24] ultimately resulted in preservation of a

bankruptcy estate asset of $48,110.76.   Absent Attorney Rigoglioso's 341 Meeting and

post-341 Meeting "cooperation" it is highly likely that the Net Proceeds would have been

further dissipated, the Trustee would have had to engage counsel to attempt a recovery,

and, for practical reasons, any actual benefit to the estate and creditors from such recovery

would have been significantly less than $48,110.76.   Absent this "cooperation" the Court

would have included in the sanctions a monetary sum equal to the difference between the

amount of actual funds turned over to the Trustee and the Property sale Net Proceeds

remaining in the possession of the Debtors on the Petition Date.   In recognition of this

arguably mitigating conduct, the Court will discount one-half this amount in the sanctions

calculus which follows.

For knowingly orchestrating, joining, aiding and abetting, and enabling the Debtors'

illicit bankruptcy scheme as particularized herein, by signing, filing, submitting, and later

advocating, the Petition, Schedules and Statements for an improper purpose, knowing the

---

[24]The record does not provide a clear basis for the Court to determine why
Attorney Rigoglioso and the Debtors elected to disclose the existence of the Property
sale at the 341 Meeting. It does appear that initially Attorney Rigoglioso did not fully
appreciate the significance of the false statements in the Petition – *see* Part III, Section
D, Para. 30, *supra* (referencing his matter of fact comments to the Trustee that the
fraud could be fixed by filing an amended schedule C, or dismissing  the bankruptcy
case).

same to contain false allegations, false factual contentions, and false denials of facts, the

Court imposes sanctions under Rule 9011(b)(1), (3) & (4) as follows:

<u>Monetary Sanctions</u>

On or before **November 30, 2007**, Attorney Rigoglioso shall

     (A) pay to the Trustee, *individually*, not as trustee of the bankruptcy estate, the sum of **$8,457.90**, in compensation for unnecessary time spent, and

     (B) forfeit and pay to the Trustee, as representative of the bankruptcy estate and *for the benefit of the bankruptcy estate*, attorney's fees paid by the Debtors in the Instant Case in the amount of **$1,000.00**, and

     (C) pay to the Trustee, as representative of the bankruptcy estate and *for the benefit of the bankruptcy estate*, the sum of **$5,944.65** representing one half of the difference between the amount of actual funds turned over to the Trustee ($48,110.70)[25] and the estimated amount of Property sale net proceeds remaining in the possession and control of the Debtors on the Petition Date of the Instant Case ($60,000.00),[26]

representing total monetary sanctions of **$15,404.55**,[27] and

---

[25] On January 11, 2005, the Debtors filed an amended Schedule B, Doc. I.D. No. 12, which listed $6,200.00 in a bank account owned by Mr. Hill and $41,910.00 in a bank account owned by Mrs. Hill (totaling $48,110.00), which appears to have been turned over to the Trustee.

[26] Unfortunately the best estimate of this amount comes from Attorney Rigoglioso who, as of December 8, 2004, represented that ". . . on the Petition Date the Debtors were holding approximately $60,000.00". *See Trustees Motion to Compel Debtor to Turnover Property of the Estate* (hereafter, the Motion to Compel), ¶ 7, Doc. I.D. No. 7. While this amount is $17,910.28 less than the net sale proceeds it is logically to assume that the Debtors spent some of the net sale proceeds in the six months between the Property sale and the Petition Date. On January 12, 2005, after notice and a hearing that same date on the Motion to Compel, the Court entered an Order, Doc. I.D. No. 13, requiring, *inter alia*, the Debtors to turnover to the Trustee by January 21, 2005 "all unscheduled funds they were holding on the Petition Date relating to their sale of the [Property] and other sources. . . ." As noted, the Trustee received $48,110.70.

[27] $8,457.90 + 1,000.00 + 5,944.65 = $15,402.55 ($8,457.90 to the Trustee, individually, not as trustee of the bankruptcy estate; $6,944.65 to the Trustee, as

Educational (Tutoring) Sanction

As soon as reasonably possible, but no later than **November 30, 2007,** Attorney Rigoglioso shall identify and arrange to take, subject to approval by the Court, a course in legal ethics at an accredited Connecticut Law School and shall attend all scheduled classes unless unable to do so as a result of illness requiring medical consultation and upon recommendation by a licensed physician. Any such course must be successfully completed under standards applicable to ordinary students on or before June 30, 2008. Upon the successful completion of such course Attorney Rigoglioso shall file a certification with this Court certifying such completion.

Alternatively, Attorney Rigoglioso may identify a law professor who teaches legal ethics at an accredited law school, and arrange for private tutoring in legal ethics from that professor. The tutoring shall focus on an attorney's duty of candor and honesty and shall consist of not less than 10 hours of personal instruction including such exercises or written papers as the tutor may deem appropriate. Counsel's tutoring arrangement must include provision for payment of the tutor's fee in advance. Prior to commencement of the tutoring, Attorney Rigoglioso must present to the Court and serve upon the Trustee and the United States Trustee a written proposal (hereafter, the "Proposal") including the name and qualifications of the tutor, a proposed syllabus, and the written statement of the tutor that he or she has read this opinion and will undertake the engagement. Tutoring shall not

---

representative of the bankruptcy estate, and for the benefit of the bankruptcy estate). Payment to be by two instruments – one payable to the "Ronald I. Chorches" in the amount of $8,457.90, a second payable to "Ronald I. Chorches, Trustee" in the amount of $6,944.65.

26

commence until the Court approves the Proposal. The Proposal must be submitted to the

Court on or before December 7, 2007, and tutoring shall be completed by June 30, 2008.

*B. Sanctions Under Title 28,  United States Code, Section 1927.*

Section 1927 of Title 28, United States Code, provides:

Any attorney or other person admitted to conduct cases in any court of the
United States or any Territory thereof who so multiplies the proceedings in
any case unreasonably and vexatiously may be required by the court to
satisfy personally the excess costs, expenses, and attorneys' fees
reasonably incurred because of such conduct.

By its terms, Section 1927 addresses unreasonable and vexatious conduct; and "it

imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics."

United States v. Int'l Brotherhood of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991); see

also,   Baker v. Latham Sparrowbush Assoc., 931 F.2d 222, 230 (2d Cir. 1991) ("A

bankruptcy court may impose sanctions pursuant to 28 U.S.C. §1927 if it finds that an

attorney's actions are so completely without merit as to require the conclusion that they

must have been undertaken for some improper purpose such as delay." (internal quotation

marks and citations omitted));  In re 60 East 80th Street Equities, Inc., 218 F.3d 109 (2d

Cir. 2000) ("Sanctions may be imposed, however, only when there is a finding of conduct

constituting or akin to bad faith." (internal quotation marks and citations omitted)).

Notwithstanding his "disclosure" of the false statements at the  341 Meeting, and his

limited "cooperation" in the Trustee's efforts to recovery the Property Sale Net Proceeds

thereafter, it  appears to the Court that Attorney Rigoglioso's conduct and actions incident

to the 341 Meeting, and before the Court, were in significant material respects,  misleading,

intentionally dilatory and obstructive, and undertaken for the improper purposes of (i)

obstructing the Chapter 7 Trustee's, and the Court's, legitimate inquiries to determine the

27

truth, (ii) causing confusion and delay, and (iii) further concealing  the truth.  Indeed

Attorney Rigoglioso's conduct throughout the case reflect an attorney attempting to "pull

the wool" over the Trustee's and the Court's eyes by seeking to control the inquiries,

answers thereto, and the proceedings as a whole.  A Section 341 examination provides

opportunity to question *debtors*. At the 341 Meeting Attorney Rigoglioso continually

interrupted, answered questions himself, suggested answers, interposed leading

questions, and otherwise interfered with an orderly examination, all at the expense of

clarity.[28]  His Hearing representations were also rife with inconsistencies, further impeding

the truth finding process.[29]  The totality of circumstances attending Attorney Rigoglioso's

---

[28]The  341Meeting inquiry of the Debtors was also hampered by the Trustee,
who seemingly acquiesced in Attorney Rigoglioso's conduct, and declined to pursue a
unique opportunity to ask meaningful questions of the Debtors. In making this
observation, the Court, is cognizant that other procedural devices are available for more
particularized inquiry of debtors.  Nevertheless, the Trustee's (i) effectively ceding
control of the 341 Meeting to Attorney Rigoglioso, and (ii) failure to pursue further
particularized questioning of the Debtors, contributed to a lost opportunity to ascertain
the truth. By the time of the Hearing the Debtors suffered from a convenient loss of
memory as to the relevant facts stating, *inter alia*, "I can't remember", "I don't know what
I did yesterday", "I'm under a lot of medication", and "I don't recall", H. Tr. 12:33:00.

[29]For example, Attorney Rigoglioso's Hearing statement is in direct conflict  with
the Debtors'  341 Meeting testimony – that following the Property sale they "spent the
money", Tr. at  5, *see, e.g.*, H. Tr. at 12:03:00. More specifically, at the Hearing
Attorney Rigoglioso responded:

> THE COURT: *Was that money [the $77,000.00] in that account at the
> time of the 341*?
> ATTORNEY RIGOGLIOSO: That was not, your honor.
> THE COURT: Where did it come from?
> ATTORNEY RIGOGLIOSO: That was . . . *in the form of an uncashed
> check* from the sale of [the Property](emphasis supplied).
> THE COURT: But I thought they said they spent all the money?
> ATTORNEY RIGOGLIOSO: I understand, your honor. They had filed a
> waiver of discharge your honor and they did not wish to get into that issue.

case conduct reflect an individual trying to mask the truth not someone oblivious to facts.

For unreasonable and vexatious conduct by an attorney admitted to conduct cases before the United States District Court for the District of Connecticut, for attorney conduct in bad faith, vexatiously, wantonly, and for oppressive reasons, and to curtail abusive litigation practices to insure future management of its affairs so as to achieve the orderly and expeditious disposition of cases, the Court imposes monetary sanctions under Title 28, U.S.C. § 1927 as follows:

> On or before **November 30, 2007**, Attorney Rigoglioso shall pay to the Trustee, *individually*, not as trustee of the bankruptcy estate, reasonable attorney's fees totaling **$8,457.90**.[30]

The monetary sanctions imposed pursuant to Section 1927 are not in addition to the monetary sanctions imposed pursuant to Rule 9011, see IV. Discussion, Part A, Monetary Sanctions, supra, or the inherent power of the Court, see IV. Discussion, Part C, infra.

*C. Sanctions Under the Inherent Power of the Court & Code Section 105*[31]

---

H. Tr. 11:59:00 (emphasis added).

The Waiver of Discharge, however, was not filed until May 10, 2005, six months after the Section 341 meeting. Attorney Rigoglioso's statement is also inconsistent with his own December 8, 2004 statement to the Trustee that on the Petition Date the Debtors were holding approximately $60,000.00 remaining from the Property Sale.

[30]By its clear language Section 1927 limits sanctions to "excess costs, expenses, and attorneys' fees reasonably incurred because of such [vexatious] conduct".

[31]The Court views Section 105(a) as part of the support for its inherent authority. That subsection provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or

In addition to Rule 9011 and Section 1927, a court has an additional means at its disposal for sanctioning improper conduct -- its inherent authority to curtail abusive litigation practices.

> This power stems from the very nature of courts and their need to be able "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., ---  U.S. -- -, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991)  (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89, 8  L.Ed.2d 734 (1962)). One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has " 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" Ayeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 258-59, 95 S.Ct. 1612, 1622-23, 40 L.Ed.2d 141 (1975) (quoting F.D. Rich Co. v. United States ex rel. Industrial Lumber Co., 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974)).  Sanctions imposed under a court's inherent power – commonly known as the bad faith exception to the "American Rule" against fee shifting –  "depend not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation." Chambers, 111 S.Ct. at 2137.

United States v. Int'l Brotherhood of Teamsters, supra, 948 F.2d at 1345.

Under standards well-established in this Circuit, a trial court's inherent power must be exercised with restraint and not utilized unless the challenged conduct is "entirely without color" and "motivated by improper purposes."  Milltex Industries Corp. v. Jacuard Lace Co., LTD, 355 F.3d 34, 35 (2d Cir. 1995).

The aforementioned Debtors' false statements and representations intended to prejudice creditors, implemented through Attorney Rigoglioso, and compounded by his behavior at the 341 Meeting, the Initial Hearing, and the Hearing, constitute conduct

---

implement court orders or rules, or to prevent an abuse of process.

"entirely without color" and "motivated by improper purposes." The totality of this conduct prejudiced creditors, the Trustee, the United States Trustee, and visited a disruptive and wasteful effect on the limited resources of this Court, and warrants sanctions pursuant to the inherent power of the Court (including Section 105) as follows:

> On or before **November 30, 2007**, Attorney Rigoglioso shall pay Monetary Sanctions totaling **$15,404.55,** and be subject to Education Sanctions, identical to, but not in addition to, the Monetary and Educational Sanctions imposed pursuant to Rule 9011, see Monetary and Educational Sanctions imposed in IV. Discussion, Part A, supra, with such Monetary Sanctions not in addition to the sanctions imposed pursuant to Section 1927, see IV. Discussion, Part B, supra.

### D.  Referral to the United States Attorney for the District of Connecticut

Title 18, United States Code, Section 157 provides that making a false or fraudulent representation or claim in relation to a bankruptcy case is a federal crime. Title 18, United States Code, Section 3057 requires any judge who has "reasonable grounds for believing that any violation under chapter 9 of this title [18 USC §§ 151 *et seq*] . . ." to report the details to the appropriate United States Attorney. Therefore, *guided* by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereafter, the "BAPCPA"), as codified at 18 U.S.C. § 158(d), and this Court's Procedures for Referral of Materially Fraudulent Statements in Bankruptcy Schedules (hereafter, the "Referral Procedures") (both effective October 17, 2005),[32] the Clerk shall transmit a Notification Statement, with a copy of this Memorandum attached to the office of the United States Attorney for the District of Connecticut and the Special Agent-in-Charge, Federal Bureau of Investigation, New Haven Division, with an appropriate attention line to the Special Agent designated

---

[32]As the Petition Date in this Case is October 19, 2004, BAPCPA and the Referral Procedures are not directly applicable.

pursuant to 18 U.S.C. § 158(b)(2).[33] This referral is not intended to be a recommendation by this Court for or against federal criminal investigation or prosecution.

*F. Other Grounds Asserted as Warranting Sanctions*

To the extent that the Trustee and/ United States Trustee alleged specific conduct or factual predicates for sanctions against Attorney Rigoglioso, not determined or found herein to be a basis for sanctions,[34] the Supplemental Motions and Trustee's Amended Supplemental Motion shall be **DENIED**.

## V. CONCLUSION

For the reasons stated herein, an order imposing monetary and other sanctions as determined appropriate herein, shall enter simultaneously herewith.

Dated: October 23, 2007                                        BY THE COURT


                                                                Albert S. Dabrowski
                                                    **Chief United States Bankruptcy Judge**

---

[33]The record of the Instant Case reflects that the United States Trustee previously reported the Debtors' conduct in the Instant Case to the United States Attorney for the District of Connecticut.

[34]For example, *inter alia*, the Supplemental Motions seek the imposition of sanctions for Attorney Rigoglioso's filing of two amended Schedule Cs seeking to exempt the non-disclosed Property sale Net Proceeds.

32